### In re Dennis SPILOTROS, Debtor.

### The CADLE COMPANY, INC., Plaintiff,

### v.

### Dennis SPILOTROS, Defendant.

**Bankruptcy No. 88–3504–9P7.**
**Adv. No. 880–480.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Sept. 29, 1989.

Roger Waltemyer, Fort Myers, Fla., for defendant.

Karl C. Landsteiner, Fort Myers, Fla., for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Bankruptcy Judge.

THIS is a Chapter 7 case and the matter under consideration is the dischargeability vel non of certain debts owed to The Cadle Company, Inc. (Cadle), Plaintiff, by Dennis Spilotros, the Debtor in the above-captioned Chapter 7 case. The Plaintiff in a single-count Complaint contends that the debts owed it by the Debtor are nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code and alleges that the Debtor obtained credit by use of a false financial statement in writing respecting the Debtor's financial condition with the intent to deceive. The facts as established at the final evidentiary hearing which are relevant to the disposition of this matter are as follows:

On December 19, 1985, the Debtor obtained a loan in the principal amount of $43,000.00 from the American Bank of Alma, Wisconsin (Bank), evidenced by a promissory note of even date (Plaintiff's Exh. No. 2). On December 30, 1985, the Debtor obtained a second loan in the principal amount of $100,000.00 from the Bank, also evidenced by a promissory note of even date (Plaintiff's Exh. No. 3). The Bank eventually was placed into receivership under the auspices of the Federal Deposit Insurance Corporation (FDIC), who became its successor in interest. The FDIC then sold and transferred the promissory notes to Cadle as evidenced by a bill of sale and assignment of notes and security documents dated January 28, 1988 (Plaintiff's Exh. No. 1). Cadle is now the owner and holder of the promissory notes and, as such, has standing to bring this nondischargeability action.

At the time the loans were made, the Debtor was employed by Shopping Center Development Corporation of America (SCDA) and was in charge of its newly opened office in Boca Raton, Florida. The president of the Bank, Al Kurshner, Sr. (Kurshner), had known the Debtor very well for several years and was personally responsible for reviewing the Debtor's loan requests. In the early 1980's, Kurshner was the president and chairman of the board of One Potato Two, Inc. (One Potato Two), which owned and operated a chain of fast-food restaurants. Kurshner hired the Debtor as the regional manager for One Potato Two in the southeastern United States. In addition, Kurshner frequently visited the offices of SCDA and had made personal loans to partners and officers of SCDA prior to the time of making the loans to the Debtor.

Cadle maintains that the Debtor submitted a materially false financial statement and loan application in support of his request to borrow the $143,000.00 in late 1985. The information in the sworn financial statements submitted by the Debtor indicates a net worth of approximately $825,000.00 (Plaintiff's Exh. Nos. 4 and 5). Included among the Debtor's assets were a home located in Cape Coral, Florida, valued at $170,000.00; stock shares in a company called "Center Foods" valued at $130,000.00; and in a separate attachment to the financial statement, a list of interests purportedly owned by the Debtor in various real estate partnerships being developed by SCDA.

In support of Cadle's argument that the financial statements submitted by the Debtor were false, Cadle introduced into evidence a sworn financial affidavit filed by the Debtor in connection with his divorce some eight months prior to the loan request (Plaintiff's Exh. No. 6). In that affidavit, the Debtor valued his residence at $146,000.00 and the Center Foods stock at $24,000.00, and failed to list any real estate partnerships. Cadle also points out that the Debtor also testified that he had trans-

ferred his interest in his residence to his wife in the summer of 1985, four months prior to making the loan application, as part of a divorce settlement.

■ In order to prevent the discharge of a debt pursuant to 11 U.S.C. § 523(a)(2)(A), the following five elements must be proved:

1) The debt was obtained by use of a statement in writing;

2) The writing was materially false; |

3) The writing concerns the debtor's financial condition;

4) The lender reasonably relied on the writing; and

5) The debtor made, or caused the writing to be made, with the intent to deceive.

■ It is well established that the overriding purpose of the Bankruptcy Code is to provide the debtor with comprehensive, much-needed relief from the burden of his indebtedness by releasing him from virtually all of his debts. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In keeping with this policy, the exceptions to discharge set out in § 523 of the Bankruptcy Code are generally construed narrowly against the creditor and in favor of the debtor. *In the Matter of Bonanza Import and Export, Inc.*, 43 B.R. 577 (Bankr.S.D.Fla.1984). Thus, the burden lies with the plaintiff to prove by clear and convincing evidence that a particular obligation of the debtor falls within the scope of § 523. The plaintiff must establish each element of his claim of nondischargeability by clear and convincing evidence. *In the Matter of Bonanza Import and Export, Inc., supra; In re Hyers*, 70 B.R. 764 (Bankr.M.D.Fla.1987); *In re Cramer*, 93 B.R. 764 (Bankr.M.D.Fla.1988).

There is no dispute that the debt was obtained by use of a statement in writing concerning the Debtor's financial condition. It remains to be determined whether Cadle has presented clear and convincing evidence that the Debtor has submitted a materially false writing with respect to his interests in Center Foods, his real property, and his interest in the net profits from the sale of the shopping centers. Assuming arguendo that this element can be proven, Cadle must also prove by clear and convincing evidence that the lender reasonably relied on the materially false statement and that they were made with the intent to deceive.

■ No clear evidence was presented to show that the Debtor's stated value of $130,000.00 for the Center Foods stock was materially false. The Debtor testified as to personal knowledge of the volume of business of the fourteen restaurants owned by Center Foods and believed that $130,000.00 was a fair value for his 10% interest. No evidence was presented to contradict this value.

■ Further, even if the value of the Center Foods shares were overstated, no evidence was presented to indicate any reliance by the lender. Center Foods owned eleven One Potato Two restaurants and three pizza restaurants. Kurshner was the former president and chairman of the board of directors of One Potato Two and, therefore, was no doubt familiar with Center Foods operations and the value of its common stock. In sum, no evidence was adduced to indicate reliance upon the value of the Center Foods shares.

■ The Debtor stated on his financial statements that he owned an interest in "net profit in real estate" valued at $557,975.00. The statement fails to furnish any additional information on this so-called asset. It defies common sense that any prudent lender would possibly place any reliance on an "asset" like this when deciding to lend substantial sums of money. It appears that the interest consisted of the Debtor's right to receive a share of the profits of sixteen shopping centers owned by SCDA. Due to the breakup of SCDA in April 1986, and the subsequent foreclosure of each of the shopping center properties, the Debtor never realized any of the anticipated profits. While the value of the interest may have been overstated, the Debtor clearly did not show any intent to deceive. In fact, the Debtor indicated that, in his divorce settlement, he gave his wife his interest in their residence because he be-

lieved he would be well taken care of from the profits of the shopping centers.

▪ The Debtor indicated on his financial statements that his income for 1985 was $100,000.00. Cadle questioned this figure in light of the March 1985 financial affidavit which indicated that his 1984 income was less than $50,000.00. However, it appears that the Debtor obtained a substantial increase in salary in 1985 due to his promotion by SCDA to "full partner." No evidence was presented to indicate that the Debtor's stated 1985 salary of $100,000.00 was materially false.

▪ Finally, the Debtor declared on his financial statement that he owned a residence in Cape Coral, Florida, valued at $170,000.00 which was encumbered by two mortgages with a total principal balance then payable of $70,000.00. The sworn financial statement by the Debtor was unquestionably false in this regard. He did not own an interest in the real estate at the time of signing the statement as he had transferred the home to his wife four months earlier as part of the divorce settlement. It is clear that the Debtor's statement of ownership of the Cape Coral, Florida property constituted a materially false statement regarding his financial condition. Nevertheless, Kurshner testified that he would have approved the loan even if the property were not listed on the financial statement and, therefore, the Court finds that the Bank did not rely upon the false statement.

▪ The evidence, taken as a whole, indicates that it is doubtful that the Bank ever relied upon the financial statements of the Debtor when it made the two loans. Kurshner was very familiar with the Debtor and with SCDA. The loans were obtained for SCDA and guaranteed by the Debtor in order to preserve his interest in the profits of the shopping centers. Kurshner was thoroughly familiar with all of the business in which the Debtor was involved. Even if the value of the business interests were materially misstated by the Debtor on his financial statements, it is highly unlikely that Kurshner or the Bank placed any reliance upon the material mis-

statements. Thus, the element of reasonable reliance is not proved. *See Security Title and Guaranty Co. v. Stivers*, 84 B.R. 852, 854–55 (Bankr.S.D.Fla.1988). While it is true that at first blush it may appear that the Debtor's financial statement was a shade less than truthful and precise, the fact remains that when the facts are evidenced in totality, the most that could be said is that the proof presented by Cadle in support of its claim is far less than clear and convincing and is in equilibrium. This being the case, the claim of nondischargeability cannot be sustained.

Based on the foregoing, this Court is satisfied that Cadle did not establish with the requisite degree of proof all of the elements of the claim of nondischargeability under § 523(a)(2)(B) of the Bankruptcy Code. For this reason, the debts of the Debtor to Cadle are deemed dischargeable and judgment shall be entered against Cadle and in favor of the Debtor dismissing the Complaint.

A separate Final Judgment shall be entered in accordance with the foregoing.