**In re James Patrick SAVAGE, III, Debtor.**

**Bankruptcy No. 93–B–44799(JLG).**

United States Bankruptcy Court,
S.D. New York.

April 27, 1994.

James Patrick Savage, III, pro se.

Sunshine, Slott & Sunshine, P.C., New York City, for Cadle Co.

## MEMORANDUM DECISION DENYING MOTION TO REOPEN NO ASSET CHAPTER 7 CASE

JAMES L. GARRITY, Jr., Bankruptcy Judge.

The Cadle Company ("Cadle") seeks an order pursuant to § 350(b) of the Bankruptcy Code ("Code") reopening this no asset chapter 7 case. Cadle's goal is to file an adversary proceeding pursuant to

§ 523(a)(2)(B) of the Code and Bankruptcy Rule 4007 to determine the dischargeability of its claim. Alternatively, it seeks leave to conduct a broad ranging examination into debtor's affairs with a view towards commencing an action under § 727(d) of the Code to vacate debtor's discharge. Cadle also claims that the case must be reopened to administer an undisclosed asset. For the reasons stated herein, the motion is denied.[1]

*Facts*

On September 27, 1993 (the "Filing Date"), debtor filed a no-asset case under chapter 7 of the Code. All creditors listed in Schedule F of debtor's petition were timely mailed a Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors, And Fixing of Dates ("§ 341 Notice"). That notice scheduled the § 341(a) meeting of creditors for October 21, 1993 and advised that December 20, 1993 was the deadline for filing complaints (i) objecting to debtor's discharge and/or (ii) to determine dischargeability of certain types of debts. Alexander Schachter, Esq., the Chapter 7 trustee, convened and closed the § 341(a) meeting on October 21, 1993. On November 19, 1993, he filed a report of no distribution. By order dated January 31, 1994, debtor received his discharge. The final decree was signed and the case was closed on February 18, 1994.

Debtor formerly served as president of West Virginia Sioux Coal Corp. ("Sioux Coal"). On or about August 15, 1981, The Tucker County Bank of West Virginia (the "bank") loaned Sioux Coal $331,071.21, for the purchase of eight generators. That loan was secured by a lien on the generators and was evidenced by a note, the payment of which was personally guaranteed by debtor. On or about July 23, 1982, debtor executed a demand note in favor of the bank in the amount of $105,000. (Those notes collectively will be referred to as the "Notes"). The

---

1. This Memorandum Decision constitutes our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(c), as made applicable herein by Fed.R.Bankr.P. 7052 and 9014. Our subject matter jurisdiction of this motion is predicated on 28 U.S.C. §§ 157(a) and 1334(b), and the

"Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

bank subsequently was placed in receivership under the aegis of the Federal Deposit Insurance Corporation ("FDIC") and the loans were renewed. In connection with the loan transaction, and the renewal thereof, debtor supplied the bank and FDIC with personal financial statements dated as of August 25, 1981 and July 18, 1984, respectively. Debtor and Sioux Coal eventually defaulted on the Notes. Among other assets, each listed an interest in an entity known as Atlantic Ventures whose sole asset was represented to be a $1000 Peruvian Certificate of Indebtedness (the "Certificate") issued by the Peruvian government in April 1875. The statement valued the Certificate at $32,000,000 and debtor's interest therein at $4,000,000.

On or about September 15, 1987, Cadle purchased the Notes from the FDIC. It then retained Thomas Fluharty, Esq., a West Virginia based attorney, to attempt to realize upon them. To that end, on September 22, 1993, Fluharty commenced a collection action (the "West Virginia Collection Action") against debtor and Sioux Coal in United States District Court, Northern District of West Virginia.

Debtor listed Cadle as a creditor in Schedule F to his petition. Although debtor apparently was aware that Cadle's principal place of business is in Newton Falls, Ohio, he listed Cadle in his schedules, as follows: "c/o Thomas Fluharty, Esq., Goff Bldg., Suite 201, Clarksburg, WV 26301". Debtor explained that he listed Cadle in that fashion because Fluharty had commenced the West Virginia Collection Action less than one week prior to the filing of the petition. Indeed, debtor contends that it was the institution of that litigation which compelled him to file his voluntary petition. The petition shows that Cadle listed the address of each creditor with whom he had pending litigation as of the Filing Date as "care of" its respective counsel in the litigation. On or about September 29, 1993, a § 341 Notice was mailed to Fluharty. There is no dispute that he received it. By letter dated November 16, 1993, a copy of which was forwarded to Cadle in Ohio, Fluharty advised the district court of the pendency of debtor's case.

On or about December 13, 1993, Cadle filed a proof of claim (the "Claim") dated December 7, 1993, in this case. The Claim is in the sum of $880,083.35, and is premised on the Notes. Simultaneously, Cadle retained New York counsel to investigate the status of the Certificate. In item "14" of the Statement of Financial Affairs annexed to debtor's petition, under the caption "Property Held For Another Person", the following information appears:

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF |
|---|---|---|
| Estate of Hugo Castro Dec'd Bolivia, South America | Antique Peruvian Cert. of Indebtedness Series 1875, $1000 U.S. Face value | Lockbox 680 1st Am Bank of N.Y., 750 3rd Ave., NYC |

By letter dated December 13, 1993, Cadle's New York counsel contacted the Chapter 7 trustee. Among other things, the letter states:

Annexed hereto is a copy of a personal financial statement of [debtor] dated July 18, 1984 under oath disclosing a ⅛ interest in a Peruvian Certificate number 459 with a value at that time of $32 million dollars. The interest is an asset of the estate and the voluntary petition did not reflect the true nature thereof. My client requests that you make arrangements to sell same on behalf of the estate and my client may be interested in making a modest bid therefore in order to obtain possession thereof as a memento of a bad loan.

Cadle App., Ex. F.[2] On that day, counsel also spoke by telephone to debtor's attorney

2. "Cadle App." refers to Cadle's Application In Support Of Motion To Reopen Chapter 7 Case, dated February 28, 1994.

about the Certificate.[3] He confirmed that conversation in a letter which states, in relevant part, as follows:

This is to confirm our telephone conversation today wherein I requested you to send me a copy of the [Certificate] and I requested you to look into your client's ⅛ ownership thereof. Documents in my file indicate that [debtor] owns ⅛ thereof and these documents are inconsistent with the information contained in the Voluntary Petition. It is our position that said interest must be sold by the Trustee. I have requested your cooperation in arranging therefore.

Cadle App., Ex. G. By letter dated January 26, 1993 [sic], debtor's counsel responded to Cadle's inquiries. Among other things, counsel stated:

I have conferred with my client regarding your letter inquiry and the [Certificate]. Per his authorization, enclosed please find a copy of [the Certificate].

As recited in his petition, [debtor] has no ownership interest in [the Certificate], which was owned by Mr. Hugo Castro Marrou of Bolivia, and since his death in ... 1985, is now owned by his estate. [Debtor] was a member of Atlantic Ventures, a joint venture group informally formed in 1981 between 4 individuals (including [debtor]) and Mr. Hugo Castro Marrou as the [Certificate's] owner. The venture provided for a shared sales commission between the individuals but all ownership of the [Certificate] remained with Mr. Castro. Thus, if the [Certificate] had been sold by Atlantic Ventures, [debtor] would have been entitled to his share of that commission. After years of effort and personal expense to those persons, the [Certificate] could not be sold. Thus, no commission was or is now due [debtor], and the agreement has no value to the estate. Nor is there any ownership inter-

est of the estate in [the Certificate] that could be sold to your client.

Cadle App., Ex. H.

*Discussion*

■ Under the Code, a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *see also* Fed.R.Bankr.P. 5010 ("[a] case may be reopened on motion of ... [a] party in interest pursuant to § 350(b) of the Code"); *see, e.g., In re Kirschner,* 46 B.R. 583, 586 (Bankr.E.D.N.Y.1985) (creditor's request for opportunity to revoke debtor's discharge under § 727(d) may be sufficient cause to reopen a case). Cadle claims that the Certificate is worthless and that debtor fraudulently overstated its value in his financial statements. It contends that in delivering the statements to the bank and FDIC, debtor fraudulently overstated the value of his interest in the Certificate thereby rendering the Claim non-dischargeable pursuant to § 523(a)(2)(B) of the Code. Cadle admits that the December 20, 1993 deadline to challenge debtor's discharge has passed. However, it contends that its time to file a § 523(a)(2)(B) action should be extended pursuant to Bankruptcy Rule 4007(c)[4] because it was not served with, and never received, a copy of the § 341 Notice and thus has been denied due process.

■ The Code and rules mandate that a debtor file a schedule listing the names and addresses of known creditors. *See* 11 U.S.C. § 521(1); Fed.R.Bankr.P. 1007(a)(1); *see also Dependable Insurance Co. v. Horton (In re Horton),* 149 B.R. 49, 57 (Bankr.S.D.N.Y. 1992). This is intended to "permit notice to be given to the creditors of the bankruptcy filing so that they may have the opportunity to avail themselves of the rights afforded them by the Bankruptcy Code." *Devers v. Frankina (In re Frankina),* 29 B.R. 983, 985

---

3. Debtor is acting *pro se* in this motion.

4. That rule states:

A complaint to determine the dischargeability of any debt [of a chapter 7 debtor] pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than

30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Fed.R.Bankr.P. 4007(c).

(Bankr.E.D.Mich.1983) (citing *Birkett v. Columbia Bank*, 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904); *In re Heyward*, 15 B.R. 629 (Bankr.E.D.N.Y.1981)). Neither the statute nor rules state that the creditor be listed at a particular address. Thus, there is no requirement that a corporate creditor be listed at its home office or principal place of business. The Due Process Clause of the Fifth Amendment provides that "[n]o person ... shall ... be deprived of ... property, without due process of law...." U.S. Const. amend. V; *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (due process is satisfied by "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Consistent therewith, for purpose of § 521(1) and Bankruptcy Rule 1007(a)(1), "[a] creditor is properly scheduled if he is scheduled in a manner that is reasonably calculated to provide him with notice of the bankruptcy proceeding." *In re Frankina*, 29 B.R. at 985. It is settled that notice of the filing of a bankruptcy case sent to a creditor's attorney, will be binding on that creditor where the attorney has been retained to collect the debt scheduled in the bankruptcy petition. *See Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 457 (6th Cir. 1982); *In re Frankina*, 29 B.R. at 985; 3 L. King, *Collier on Bankruptcy* ¶ 523.13, at 523–85 (15th ed. 1993); *see also Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 222, 43 S.Ct. 570, 572, 67 L.Ed. 956 (1923) (knowledge of agent may be imputed to principal where agent acquired knowledge when acting within the scope of his authority and knowledge pertains to matters within the

scope of agent's authority). In *In re Frankina*, the court explained:

> Justification for imputing the attorney's knowledge of the bankruptcy case to his client in cases where an attorney has been retained to collect the debt scheduled in the bankruptcy proceeding is readily apparent. The filing of a bankruptcy petition has a material impact on how an attorney, retained to prosecute a client's claim must proceed to adequately represent that client. When the attorney who represents a creditor in an action to collect a debt receives knowledge of the debtor's bankruptcy filing, he has to decide how to proceed to enforce the judgment he obtained.

29 B.R. at 986. The West Virginia Collection Action was commenced five (5) days prior to the Filing Date. The Claim is the subject of that litigation. Fluharty was timely mailed the § 341 Notice and it is plain that he understood its significance because, acting on Cadle's behalf, he notified the court in the West Virginia Collection Action of the pendency of the case. Under these circumstances the § 341 Notice was reasonably calculated to reach Cadle; indeed, providing notice of the case to Fluharty was "the kind of notice that best insures that [Cadle's] interest [would] be protected." *Id.* Fluharty's knowledge of the pendency of this case and the content of the § 341 Notice is imputed to Cadle. Accordingly, debtor satisfied the mandates of § 521(1) and Bankruptcy Rule 1007(a). Cadle's due process objection is overruled.[5]

■ Because we impute Fluharty's knowledge of the bar date to Cadle, there is no merit to Cadle's assertion that it has not

---

5. Apparently, Cadle is no stranger to discharge litigation arising out of allegedly false financial statements. In *Cadle Company, Inc. v. Spilotros (In re Spilotros)*, 105 B.R. 708 (Bankr.M.D.Fla. 1989), *aff'd*, 115 B.R. 368 (M.D.Fla.), *aff'd on reh'g*, 117 B.R. 691 (M.D.Fla.1990), *aff'd*, 933 F.2d 1021 (11th Cir.1991), Cadle alleged that its claim was non-dischargeable pursuant to § 523(a)(2)(B). The underlying indebtedness arose out of two (2) loans made by the American Bank of Alma, Wisconsin (the "American Bank") to debtor. The American Bank was eventually placed in receivership under the control of the FDIC, which sold the loans to Cadle. 105 B.R. at 710. The gravamen of Cadle's complaint was that debtor obtained the loans by means of a false financial statement. *Id.* After a trial, the court held even though debtor's financial statement contained misrepresentations, it was highly unlikely that the bank had placed any reliance upon them in making the underlying loan to debtor. 105 B.R. at 712. Accordingly, the court granted debtor judgment against Cadle dismissing the complaint. *Id.* We do not address the merits of Cadle's contention that § 523(a)(2)(B) bars the discharge of *its* Claim. We note, however, that Cadle's concession that the Certificate is patently worthless significantly undermines the viability of such an action. *Id.*

been accorded the thirty (30) day notice of that date mandated by Bankruptcy Rule 4007(c). We will not extend Cadle's time to file a complaint to determine the discharge-ability of its Claim, because Bankruptcy Rule 4007(c) requires that any such request be made prior to the expiration of the sixty (60) day period fixed by that rule for bringing such an action. *See* Fed.R.Bankr.P. 4007(c), *supra*, n. 4. That period expired on December 20, 1993. The court's general power to regulate notice under the rules is specifically limited in instances like this. Bankruptcy Rule 9006 requires that any request for such an extension of time be made prior to the expiration of the sixty (60) day period stated in Bankruptcy Rule 4007(c). *See* Fed. R.Bankr.P. 9006(b)(3) (the court may enlarge the time for taking action under Rule 4007(c) "only to the extent and under the conditions" stated therein); *see also Jones v. Hill (In re Hill),* 811 F.2d 484, 485–87 (9th Cir.1987) (creditor barred from filing complaint object-ing to dischargeability of claim under § 523); *In re Sablone,* 157 B.R. 739, 742 (Bankr. D.Conn.1993) (§§ 523 and 727); *Citizens First National Bank of New York v. Kirk-patrick (In re Kirkpatrick),* 120 B.R. 309, 312 (Bankr.S.D.N.Y.1990) (same). Cadle claimed, but did not prove, that Fluharty did not advise it of the bar date until after it lapsed. Even assuming that the allegation is true, and that Fluharty's failure timely to advise Cadle of the bar date was "excusable", *cf. Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993), Cadle's request to extend the time periods under Bankruptcy Rule 4007(c) must be denied. Bankruptcy Rule 9006(b)(3) does not make allowance for ex-

cusable neglect. *See Kelly v. Gordon (In re Gordon),* 988 F.2d 1000, 1001 n. 1 (9th Cir. 1993); *Ichinose v. Homer Nat'l Bank (In re Ichinose),* 946 F.2d 1169, 1176 (5th Cir.1991); *see generally Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* —— U.S. at ——, 113 S.Ct. at 1497 (recognizing that there are instances in which the Bankruptcy Rules bar relief from excusable neglect).

▪ Pursuant to § 727(d) of the Code, on the request of a creditor, and after notice and a hearing, the court shall revoke a debt-or's discharge if:

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudu-lently failed to report the acquisition of, or entitlement to, such property, or to deliver such property to the trustee [6]; or

(3) the debtor committed an act specified in [§ 727(a)(6)] [7].

Cadle contends that we should reopen the case and authorize it to conduct an investiga-tion into whether cause exists under § 727(d) to revoke debtor's discharge. In support thereof, it states:

1. For the first time … on January 26, 1994, [debtor asserted] that the [certifi-cate] is not the property of Atlantic Ven-tures but is instead the property of the estate of [Hector Castro Marrou] … and could not be sold. However, more than

---

**6.** This subsection requires debtor to disclose to the trustee post-petition acquisitions of property. *See* 4 L.King, *Collier on Bankruptcy* ¶ 727.15[4], at 727–111—727–112 (15th ed. 1993). To state a claim under this section, the trustee must show that the debtor fraudulently failed to report its acquisition of, or entitlement to, property that would be property of the estate. *See In re Yoni-kus,* 974 F.2d 901 (7th Cir.1992); *Buckstop Lure Co. v. Trost (In re Trost),* 164 B.R. 740 (Bankr. W.D.Mich.1994).

**7.** That section states that the court shall grant a debtor a discharge unless the debtor has refused, in the case:

(A) to obey any lawful order of the court, other than an order to respond to a material ques-tion or to testify;
(B) on the ground of privilege against self-incrimination, to respond to a material ques-tion approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or
(C) on a ground other than the properly in-voked privilege against self-incrimination, to respond to a material question approved by the court or to testify;
11 U.S.C. § 727(a)(6).

eight years after the date of [Marrou's] death, the debtor has possession of the [Certificate] in his own safe deposit box. Is this estate to remain closed and the debtor given the opportunity to realize for his own benefit a potential asset that should redound to benefit creditors? Manifestly not.

2. If the [Certificate] is in fact the property of said decedent and could not be sold, what prompted the debtor to assure Cadle over the years that the [Certificate] was worth millions, would soon be sold and that Cadle would be paid?

3. The whole case reeks of suspicion, smacks of fraud and should be reopened for an in-depth investigation, especially in light of the debtor having submitted a false financial statement to the FDIC and deceived Cadle over the years.

■■■■ Cadle's rhetoric plainly does not implicate §§ 727(d)(2) or (3). The discharge of a debtor furthers his fresh start, and thus one of the primary goals of the Code. *See Farouki v. Emirates Bank International, Ltd.,* 14 F.3d 244, 249 (4th Cir.1994) (citing *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970)); *Green v. Welsh,* 956 F.2d 30, 33 (2d Cir.1992); *see also* 11 U.S.C. § 727(e) (specifying time constraints governing § 727(d) litigation). As such, the discharge order should not be lightly disturbed. *See In re Trost,* 164 B.R. at 743–44 (Bankr.W.D.Mich.1994). Cadle squandered its opportunity to conduct the free ranging "fishing expedition" it now seeks. *Compare* Fed.R.Bankr.P. 2004. There are several flaws in Cadle's assertion that it should be given leave to conduct an investigation in anticipation of the commencement of § 727(d) litigation. First, the rules do not countenance pre-litigation discovery for purposes of framing a complaint or determining whether a cause of action against debtor exists. *See* Fed.R.Civ.P. 27; Fed.R.Bankr.P. 7001(4) and 7027; *see also Ash v. Cort,* 512 F.2d 909, 912 (3d Cir.1975); *In re Application of Checkosky,* 142 F.R.D. 4, 7 (D.D.C.1992); *In re Wolfson,* 453 F.Supp. 1087, 1096 (S.D.N.Y.1978); *Petition of Ferkauf,* 3 F.R.D. 89, 90 (S.D.N.Y.1943). Second, even if we found that debtor con-

cealed the true nature of his interest in the Certificate, Cadle could not state a claim for relief under § 727(d)(1). The correspondence between Cadle's New York counsel and the Chapter 7 trustee and debtor's counsel proves that Cadle was aware that debtor had failed to disclose the true nature of his interest in the Certificate prior to the entry of the discharge order. As such, Cadle is barred from seeking to revoke the discharge order on that basis. *See Brown v. Barley (In re Barley),* 130 B.R. 66, 70 (Bankr. N.D.Ind.1991); *Bear Stearns & Co., Inc. v. Stein (In re Stein),* 102 B.R. 363, 367–368 (Bankr.S.D.N.Y.1989); *In re Kirschner,* 46 B.R. at 586–597. Finally, during argument, Cadle conceded what debtor's counsel contended in his January 26 letter: the Certificate is worthless. Debtor's discharge should not be revoked pursuant to § 727(d)(1) for failure to schedule an asset unless the fraud has a demonstrable impact on distribution to creditors. *See Donovan v. La Porta (In re La Porta),* 26 B.R. 687, 692 (Bankr.N.D.Ill. 1982).

There is no dispute that the Certificate is worthless. Thus, it is of no moment whether debtor possesses an interest in the Certificate, as Cadle contends, or, as debtor maintains, only a right to share a commission in the event Atlantic Ventures can sell the Certificate. In either case, debtor's "asset" has no value. This case shall not be reopened to require the trustee to administer that asset.

*Conclusion*

Based upon the foregoing, the motion is denied.