**In re Cletus Rayvon TUCKER, Debtor.**

**Bankruptcy No. 97–15163C–7G.**

United States Bankruptcy Court,
M.D. North Carolina,
Greensboro Division.

April 13, 1998.

Harold F. Greeson, Greensboro, NC, for Jeffrey W. Beck.

Richard S. Towers, High Point, NC, for Debtor.

## ORDER
### WILLIAM L. STOCKS, Chief Judge.

This case came before the court on March 24, 1998, for hearing upon a Motion to Enlarge Time for Filing Complaint Objecting to Dischargeability of Debt which was filed on behalf of Jeffrey W. Beck. Harold F. Greeson appeared on behalf of Jeffrey W. Beck and Richard S. Towers appeared on behalf of the Debtor.

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (I) which this court may hear and determine.

## FACTS

This voluntary Chapter 7 case was filed on October 10, 1997. At that time Jeffrey W. Beck ("Mr. Beck" or "Claimant") was a creditor of the Debtor, having obtained a judgment against the Debtor for $69,-000.00 on May 19, 1995. The schedules filed by the Debtor listed Mr. Beck as an unsecured creditor and showed his address as Route #3, Box 535, Denton, North Carolina 27239. On October 16, 1997, the clerk issued a notice setting the meeting of creditors in this case for November 17, 1997, and listing January 16, 1998, as the deadline for filing complaints objecting to dischargeability of indebtedness. A copy of this notice was mailed to creditors on October 17, 1997, including Mr. Beck. The notice was mailed to the address listed for Mr. Beck in the schedules. However, this address was not the mailing address for Mr. Beck, who had moved from that address in 1993.

Mr. Beck did not receive the notice which was mailed out by the clerk on October 17, 1997. However, in early December of 1997, the attorney who was pursuing the collection of the judgment which Mr. Beck held against the Debtor learned that the Debtor had filed bankruptcy. This occurred on or about December 9, 1997, when the attorney or his paralegal contacted the Clerk of Superior Court of Randolph County in order to have execution issued against the Debtor. At that time, the Clerk in Randolph County informed the attorney or his paralegal that the Debtor had filed bankruptcy. Mr. Beck's attorney wrote to the clerk of bankruptcy court on December 9, 1997, inquiring about the bankruptcy case and whether Mr. Beck was listed as a creditor.

On January 4, 1998, Mr. Beck received a call from his brother informing him that an envelope from the bankruptcy court which was addressed to Mr. Beck had been received by the brother. On January 5, 1998, Mr. Beck obtained the envelope from his brother. The envelope contained a motion to avoid lien which had been filed by the Debtor in this case. On January 6, 1998, Mr. Beck called his attorney, advised him of the receipt of the bankruptcy document and mailed the document to the attorney.

The motion to enlarge time for filing complaint objecting to dischargeability of debt was filed by Mr. Beck's attorney on January 27, 1998, which was eleven days after the deadline for filing complaints objecting to dischargeability. The Debtor objects to the request for enlargement of time and contends that no enlargement may be granted because the motion was filed after the expiration of the time for filing complaints.

## DISCUSSION

■ Mr. Beck's judgment against the Debtor grew out of an incident in which the Debtor intentionally shot Mr. Beck with a firearm. As a result of this incident Mr. Beck recovered a judgment in the amount of $69,000.00 consisting of $9,000.00 of compensatory damages for battery and $60,000.00 of punitive damages which were imposed upon a finding by the jury that Debtor's conduct was "outrageous or aggravated". Mr. Beck contends that the debt is nondischargeable under § 523(a)(6) under which debts for willful and malicious injury by the Debtor are excepted from discharge.

Under § 523(c)(1) dischargeability actions involving paragraphs (2), (4), (6) or (15) must be brought in the bankruptcy court for determination by the bankruptcy court. The time for filing complaints under § 523(c) is controlled by Rule 4007(c) of the Federal Rules of Bankruptcy Procedure which provides that a complaint to determine the dischargeability of any debt

pursuant to § 523(c) shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). Rule 4007(c) authorizes the court to extend the time for filing complaints for cause; however, the rule provides that a motion seeking such an extension "shall" be filed before the time has expired.

Rule 4007(c) also provides that the court shall give not less than 30 days notice of the time fixed for the filing of complaints under § 523(c) to all creditors in the manner provided in Rule 2002. In the present case, a notice was prepared and served by the clerk which gave November 17, 1997, as the date for the § 341 meeting of creditors and January 16, 1998, as the deadline for filing complaints objecting to the dischargeability of debts under § 523(a)(2), (4) or (6) of the Bankruptcy Code. The notice complied with the requirements of Rule 4007(c). However, the notice was not received by Mr. Beck because he no longer lived at the address to which the notice was mailed and the notice was not forwarded to him by the post office. Although Mr. Beck did not receive the notice, he did learn that the Debtor had filed bankruptcy. Mr. Beck, through his attorney who was pursuing the claim against the Debtor, first learned of Debtor's Chapter 7 case no later than December 9, 1997, when the attorney was informed that the Debtor had filed bankruptcy by the Clerk of Superior Court of Randolph County. Approximately a month later, on January 6, 1998, Mr. Beck himself received a mailing from the bankruptcy court regarding the Debtor's case. This case thus is one in which the creditor did not receive formal notice of the deadline for filing dischargeability complaints but did obtain actual knowledge of the bankruptcy filing before the expiration of the time for filing dischargeability complaints.

Where a creditor has not received formal notice of the bankruptcy filing and the deadline for filing dischargeability complaints, but does gain actual knowledge of

the bankruptcy case in time to file a dischargeability complaint, the prevailing rule is that such creditor is bound by the deadline contained in Rule 4007(c). In such cases, complaints or motions for extensions of time which are filed after the deadline are disallowed as untimely. *E.g., Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1145 (C.A.10 1991) (Creditor's actual knowledge of debtor's case, "in ample time for them to prepare and timely file the necessary request for determination of dischargeability, bars them from challenging the dischargeability of their claim some fifteen months after the bar date for such complaints."); *In re Compton*, 891 F.2d 1180 (C.A.5 1990) ("Precedent in case law also upholds a finding that notice of bankruptcy proceedings received in time to act prior to the filing deadlines constitutes sufficient notice."); *Lompa v. Price (In re Price)*, 871 F.2d 97, 98 (C.A.9 1989) (creditor's counsel's actual notice of bankruptcy case "in time to file a complaint, or at least to file a timely motion for an extension of time" is enough); *Byrd v. Alton (In re Alton)*, 837 F.2d 457, 461 (C.A.11 1988) (a creditor who has actual knowledge of the debtor's bankruptcy and takes no action to inform himself of the dates to file a complaint contesting dischargeability or for an extension of such time cannot complain regarding the consequences of his inaction); *Kamjo Corp. v. McMichael (In re McMichael)*, 146 B.R. 661 (Bankr.E.D.Va. 1991); *In re Hill*, 117 B.R. 663 (Bankr. N.D.Okla.1990).

There is a split of authority regarding exactly how much actual notice a creditor must have before such creditor will be bound by the filing deadline. One line of cases holds that the creditor is entitled to 30 days notice of some kind, whether formal, actual or inquiry, and that late filing by the creditor will be permitted where less than 30 days notice was given. *Durham Ritz, Inc. v. Williamson (In re Williamson)*, 15 F.3d 1037 (C.A.11 1994); *Harper v. Burrier (In re Burrier)*, 184 B.R. 32 (Bankr.N.D.Ohio 1995); *Herbert v. Schwartz (In re Schwartz & Meyers)*, 64 B.R. 948 (Bankr.S.D.N.Y.1986). These cases represent a minority view. *See In re Marino*, 195 B.R. 886 (Bankr.N.D.Ill.1996).

The second line of cases, representing the majority view, holds that the creditor is entitled to a "reasonable" notice period in which to file a complaint or motion for extension of time and what constitutes reasonable notice may be less than 30 days notice. *See In re Marino*, 195 B.R. at 886; *Neeley v. Murchison*, 815 F.2d 345 (C.A.5 1987); *Employers Workers' Compensation Ass'n v. Kelley (In re Kelley)*, 194 B.R. 258 (Bankr.N.D.Okla.1996) (eleven days actual notice was sufficient time to either file a complaint or file a motion for extension of time); *Wood v. Jasperson (In re Jasperson)*, 116 B.R. 740 (Bankr.S.D.Cal.1990) (three days actual notice was sufficient time to file a complaint or file a motion to extend).

Under either line of authority, the motion for enlargement of time in the present case is untimely. Mr. Beck, based upon the knowledge of his attorney, is charged with notice of the Debtor's bankruptcy filing no later than December 9, 1997. *See In re Savage*, 167 B.R. 22 (Bankr.S.D.N.Y. 1994). This notice was 38 days before the expiration of the time for filing dischargeability complaints or motions to extend the time for filing dischargeability complaints. Additionally, Mr. Beck himself received notification that the Debtor was in bankruptcy twelve days before the deadline. Even though Mr. Beck did not receive the formal notice which was mailed out on October 17, 1997, the actual knowledge of Mr. Beck's attorney of the bankruptcy filing 38 days before the deadline for filing complaints, together with Mr. Beck's later personal knowledge of the filing, afforded reasonable notice to Mr. Beck for the timely filing of either a complaint or a motion for enlargement of time in this case.

Counsel for Mr. Beck argues that Mr. Beck should not be bound by the January 16, 1998 filing deadline because of the failure of the Debtor to supply a cor-

rect address in the schedules and because the Debtor failed to include in the schedules the name and address of the attorney who handled Mr. Beck's lawsuit against the Debtor. This argument is rejected. There is no affirmative duty on the part of a debtor or his counsel to ascertain whether a creditor is represented by an attorney for purposes of assuring proper notice to creditors in a bankruptcy case. In a situation in which the debtor or debtor's counsel have dealt with an attorney for a creditor in connection with the bankruptcy case there may be a requirement that the attorney be listed in the schedules. However, where the name of an attorney is known to the debtor only because of the attorney's involvement in a matter which pre-dated the bankruptcy, there is no requirement that such attorney be included in the schedules. *See In re Horton,* 149 B.R. 49, 59 (Bankr.S.D.N.Y.1992).

■ In the present case, the judgment which Mr. Beck's attorney obtained against the Debtor was entered in May of 1995, more than two years before this bankruptcy case was filed. Under such circumstances, there was no requirement that the Debtor list the attorney in the schedules and the failure to do so did not constitute bad faith or inequitable conduct on the part of the Debtor. A debtor may be precluded from taking advantage of the filing deadline in a situation in which the failure to list the creditor's name and address correctly in the schedules involved a deliberate, willful attempt to deny effective notice to a creditor. *See In re Marino,* 195 B.R. 886, 894 (Bankr.N.D.Ill.1996). The evidence in the present case, however, does not establish such willful and bad faith conduct on the part of the Debtor. The address which was used in the schedules was an address at which Mr. Beck had resided for approximately three years. When the mailings to that address were returned, the Debtor obtained and supplied a second address to his attorney. The second address obtained by the Debtor and supplied to his attorney was 4412 Brower Cliff Road, Thomasville, North Carolina, which was an address at which Mr. Beck had lived for a short time after moving from the address originally listed in the schedules. There was no showing in the present case that the Debtor had any more current address than the address which he supplied to his attorney and no basis for finding bad faith on the part of the Debtor based upon the addresses which were utilized for Mr. Beck before he finally received some of the bankruptcy mailings.

■ The court also rejects the argument that Claimant's attorney was misled or prevented from ascertaining the deadline for filing dischargeability complaints by the clerk's office. The initial contact with the clerk's office was a letter dated December 9, 1997, written by a paralegal in the attorney's office. After advising of the attorney's representation of the Claimant, the letter states:

I was informed by the Randolph County Clerk of Superior Court that Mr. Tucker has filed a bankruptcy action. If this is correct, please be kind enough to forward a copy of these bankruptcy documents to this office so that we may determine if this Judgment was listed as an outstanding indebtedness on the Bankruptcy Petition.

In response to this letter, the clerk's office mailed a copy of the bankruptcy petition and a copy of the page of the schedules which listed the Claimant as a creditor. The materials mailed from the clerk's office dealt with the specific question contained in the letter, i.e., the letter requested bankruptcy documents from which it could be determined whether the judgment was listed as an indebtedness in the bankruptcy case and the clerk mailed documents containing such information. Given the scope of the inquiry in the letter, the court rejects the argument that the clerk's response was incomplete or misleading. It is also argued that the time should be extended because the court file was either in the courtroom or in cham-

bers in connection with hearings in the case when the attorney later inquired about the availability of the file. Whether or not the official court file was available at the front desk at the particular time when the attorney called, information regarding the date of the creditors' meeting and the deadline for filing complaints regarding dischargeability was readily available in the clerk's office at all times. Computer terminals are available at the front desk for attorneys and members of the public to use in order to obtain information regarding pending cases, including the date· of the first meeting of creditors and the deadline for filing dischargeability complaints. Also, files are retrieved and made available if requested by an attorney or member of the public. Some cases permit equitable relief where the clerk's office or the court inadvertently supplies erroneous information or otherwise misleads a creditor regarding the deadline for filing complaints. *See Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629 (C.A.6 Cir.1994); *In re Anwiler*, 958 F.2d 925 (9th Cir.1992), *cert. denied*, 506 U.S. 882, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992). However, in the present case, neither the Claimant nor his attorney were misled by the clerk's office nor prevented from obtaining accurate information regarding the deadline for filing dischargeability complaints.

While Bankruptcy Rule 4007(c) provides for an extension of the time for filing dischargeability complaints, the motion seeking such an extension must be filed before the time has expired if the creditor has reasonable notice of the filing of the bankruptcy case. In the present case, the Claimant had such notice and, notwithstanding, failed to seek an extension of time before the time for filing dischargeability complaint expired. No relief therefore is available under Rule 4007(c). Likewise, no relief is available in the present case under Bankruptcy Rule 9006 because Rule 9006 permits an extension of time for taking action under Rule 4007(c) "only to the extent and under the conditions stated in those rules." Thus, if no extension is available under the terms of Rule 4007(c), then no extension may be granted under Rule 9006. *See* 11 *Collier on Bankruptcy* ¶ 4007.04[3] (15th ed.1998). The motion for extension of time therefore must be denied.

IT IS SO ORDERED.