**In re: Louis Paul MASSA, doing business as Keseca Development Corp., Debtor.**

**Louis Paul Massa, doing business as Keseca Development Corp., Debtor–Appellant,**

v.

**C. Donald Addona; Rebecca Addona; Peter J. Craig; Knauf & Craig, LLP; and C. Clark Cannon, Appellees.**

**Docket No. 98–5050.**

United States Court of Appeals, Second Circuit.

Argued April 27, 1999.

Decided Aug. 10, 1999.

David D. MacKnight, Lacy, Katzen, Ryen & Mittleman, LLP, Rochester, NY, for Debtor–Appellant.

Peter J. Craig, Knauf Craig Koegel & Shaw, LLP, Rochester, NY, for Appellees.

Before: WINTER, Chief Judge, and MINER and POOLER, Circuit Judges.

MINER, Circuit Judge:

Debtor–Appellant Louis Paul Massa appeals from a denial of his motion to hold appellees C. Donald Addona and Rebecca Addona (the "Addonas") and their attorneys in contempt for violating an injunction pursuant to an order granting discharge of Massa's bankruptcy petition and 11 U.S.C. § 524(a). Massa contends that the appellees had knowledge of his bankruptcy petition through three letters mailed to the Addonas' attorneys and that the Addonas continued their action against Massa in the state court despite Massa's bankruptcy proceeding. The Addonas contend that the state court appropriately exercised concurrent jurisdiction over their action against Massa and that Massa is now precluded from challenging that decision.

For the reasons that follow, we affirm the denial of Massa's motion to hold the appellees in contempt.

## BACKGROUND

In April of 1991, the Addonas commenced a civil action against Massa d/b/a Keseca Development Company in the New York State Supreme Court in Ontario County (James R. Harvey, Justice) (the "State Court Action") alleging fraud and false representation in connection with a contract for the development of a commercial real estate complex. On June 19, 1992, the Addonas filed a Note of Issue indicating that the State Court Action was ready for trial.

On July 1, 1992 Massa filed a petition in the United States Bankruptcy Court for the Western District of New York initiating a Chapter 13 bankruptcy proceeding. Six days later, on July 7th, Massa's attorney in the State Court Action sent a letter to Justice Harvey with a copy to the Addonas' attorney, appellee C. Clark Cannon, stating that "[w]e have been informed that the Defendant, Louis Massa d/b/a Keseca Development Company, has filed a Chapter 13 Bankruptcy in the Western District of New York. Accordingly, this action is now stayed and we request that the Court hold the motion [to proceed with trial] in abeyance pending the disposition of the bankruptcy filing." On July 14, 1992 Massa's attorney in the State Court Action sent another letter to Cannon which stated, in pertinent part,

I presume that you received a copy of my letter to Judge Harvey dated [July 7, 1992], indicating that Mr. Massa has apparently filed a Chapter 13 bankruptcy. Accordingly, all proceedings before Judge Harvey are stayed.

As indicated in my July 7th letter, we have filed motion papers with the Court, requesting that the Note of Issue be stricken.... The motion is being held

in abeyance pending Mr. Massa's bankruptcy proceeding. In the event that the Chapter 13 is stricken, and a Chapter 7 is not filed, we will proceed with the motion.

The day before the July 14 letter was sent by his counsel, Massa had filed the schedules and statement required under the Bankruptcy Code (the "Schedules"). *See* 11 U.S.C. § 521(1). The Schedules did not list the Addonas as creditors or disclose the pending State Court Action. Massa's Chapter 13 proceeding was later converted to a Chapter 11 proceeding, then to a Chapter 7 proceeding in November of 1992 and thereafter administered as an asset case. On March 10, 1993, an Order was entered granting Massa a discharge (the "Discharge Order") and in May of 1997 the case was closed.

Meanwhile, the State Court Action continued. In a letter dated November 18, 1994 and mailed to the Addonas' attorney, Massa's attorney[1] stated, in pertinent part, that "Mr. Massa is in bankruptcy and there is a stay of all proceedings against him; furthermore, he is in a New York State Correctional Facility and, therefore, is unable to attend a trial on November 22, 1994, unless a Court orders the State to produce him." Nevertheless, the State Court Action proceeded. On October 20, 1995, Justice Harvey entered Findings of Fact and Conclusions of Law, finding Massa liable for fraud upon the Addonas' motion for a default judgment and awarding the Addonas damages in the amount of $342,587.97 (the "State Court Judgment").

The Addonas then retained another attorney, appellee Peter J. Craig, to assist them in collecting the State Court Judgment. Craig sought a subpoena compelling Massa's attendance at a post-judgment asset deposition; Massa, however, failed to appear. Craig also sought a levy upon Massa's 1993 Cadillac. In March of 1997, prior to the Sheriff's execution sale of the Cadillac, Massa's attorney filed a

---

**1.** Through the State Court Action and bankruptcy proceedings, Massa appears to have retained at least five different attorneys. They are referred to generically.

Chapter 7 Amended Voluntary Petition and Amended Schedules with the bankruptcy court (the "Amended Schedules"). The Amended Schedules listed the State Court Action and claimed the Cadillac as an asset of Massa's bankruptcy estate.

In May of 1997, by Order to Show Cause and supporting papers, the Addonas moved in the State Court Action for an order adjudging Massa in contempt for his failure to appear at the asset deposition and directing the Sheriff to proceed with the execution sale of the Cadillac. Massa cross-moved to dismiss, arguing that the debt had been discharged in bankruptcy and that the Addonas' claim should be pursued in bankruptcy court. In support of his motion to dismiss, Massa submitted the November 18, 1994 letter, arguing that the Addonas were notified of the bankruptcy proceedings. The Addonas argued that because they were never listed in Massa's Schedules, they did not have an opportunity to file a claim, and therefore, pursuant to Bankruptcy Code § 523(a)(3), their claim had not been discharged by the Discharge Order.

On June 26, 1997 Justice Harvey issued a Decision and Order (the "State Court Decision") determining that, by virtue of § 523(a)(2) and § 523(a)(3) (exceptions to discharge), the Addonas' claim had not been discharged. Massa's subsequent appeal to the Appellate Division of the New York State Supreme Court was dismissed for failure to perfect.

On November 24, 1997 Massa's bankruptcy case was reopened when he filed a motion requesting that the court enter an order enforcing the provisions of the Discharge Order and finding the Addonas, Cannon and Craig in contempt for violation of the Discharge Order and 11 U.S.C.

§ 524(a) [2] as a consequence of their respective roles in continuing the State Court Action after the Discharge Order was entered. Bankruptcy Judge Ninfo denied Massa's motion and upheld the State Court Decision as having been validly rendered in the exercise of the New York State Supreme Court's concurrent jurisdiction over § 523(a)(3) dischargeability issues. *See In re Massa,* 217 B.R. 412, 420–21 (Bankr.W.D.N.Y.1998). Bankruptcy Judge Ninfo also determined that under the *Rooker–Feldman* doctrine the bankruptcy court lacked jurisdiction to overturn the State Court Decision even if that decision was erroneous as a matter of bankruptcy law. *See id.* at 421. By Decision and Order dated July 7, 1998, Judge Siragusa of the United States District Court for the Western District of New York affirmed Bankruptcy Judge Ninfo's decision and entered judgment in accordance therewith. This appeal followed. We affirm on grounds somewhat different than those relied upon by the district court.

## DISCUSSION

■ Upon an appeal from a judgment of a district court entered after review of a bankruptcy court decision, "we review the bankruptcy court independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo." *DG Corp. v. Dabah (In re DG Acquisition Corp.),* 151 F.3d 75, 79 (2d Cir.1998).

■ Section 523 of the Bankruptcy Code, 11 U.S.C. § 523 (1994 & 1997 Supp.), governs the nondischargeability of debts in a Chapter 7 proceeding. A debt that is scheduled pursuant to § 521(1) and

---

**2.** In pertinent part, § 524 provides,

§ 524. **Effect of discharge**

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged . . .; [and]

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor. . . .

Federal Rules of Bankruptcy Procedure 1007(a) and (b)(1) is discharged unless the debt is excepted from discharge under one of the exceptions set forth in § 523(a). One such exception is a determination, pursuant to 11 U.S.C. § 523(a)(2),[3] that the debt was fraudulently incurred. Another exception to discharge is if the debt was not scheduled and the creditor lacked notice or actual knowledge of the case. *See id.* § 523(a)(3). If, however, an unscheduled creditor had actual knowledge of the bankruptcy proceeding and failed to act, the debt would be discharged. *See GAC Enterprises, Inc. v. Medaglia (In re Medaglia),* 52 F.3d 451, 455 (2d Cir.1995) (discussing § 523(a)(3)); *see also Byrd v. Alton (In re Alton),* 837 F.2d 457, 460 (11th Cir.1988) (per curiam); *In re Thompson,* 177 B.R. 443, 450 (Bankr.E.D.N.Y.1995).

■ The notice requirement is codified at 11 U.S.C. § 342(a), which provides that "[t]here shall be given such notice as is appropriate ... of an order for relief in a case under this title." Conversion from one chapter to another triggers the requirement that a creditor receive notice. *See* 11 U.S.C. § 348(c) ("Section[ ] 342 ... appl[ies] in a case that has been converted ... as if the conversion order were the order for relief."); Fed. R. Bankr.P. 1017(d), 2002(f)(2), 9014. The burden of establishing that a creditor has received adequate notice rests with the debtor. *See Dependable Ins. Co. v. Horton (In re Hor-*

*ton),* 149 B.R. 49, 57 (Bankr.S.D.N.Y.1992) (Chapter 7).

Massa asserts that § 523(a)(3)(B) and *In re Medaglia* compel the finding that the debt was discharged because the Addonas had "actual knowledge of the case in time for such timely filing" and the bankruptcy court discharged the Addonas' claim in its March 10, 1993 Discharge Order. However, the Addonas counter that § 523(a)(2) precludes discharge because the debt was fraudulently incurred and because Massa failed to schedule the claim. Thus, the Addonas argue that the state court properly exercised concurrent jurisdiction to exclude the claim from discharge. In support of their argument, the Addonas assert that Justice Harvey never received the July 7, 1992 and July 14, 1992 letters and properly assumed jurisdiction. The Addonas acknowledge that Cannon received the July 7, 1992 and July 14, 1992 letters.

The opportunity for a creditor to participate in bankruptcy proceedings is of obvious importance. *See, e.g., Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow),* 126 F.3d 43 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998). Since Massa failed to schedule the debt owed to the Addonas on his original petition, no official notice of the proceeding was provided. We therefore consider whether knowledge of the proceeding can be derived from the letters sent to the Addonas' attorney. The letters sent by

---

**3.** In pertinent part, § 523(a) provides,

> **§ 523. Exceptions to discharge**
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> . . . .
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if

known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

Massa to the Addonas on July 7, 1992, July 14, 1992 and November 18, 1994 were inadequate for the Addonas to acquire actual knowledge of Massa's Chapter 7 bankruptcy proceeding. While official notice from a bankruptcy court is not required, none of the three letters even mentioned the Chapter 7 proceeding that resulted in the Discharge Order.

Although the letters indicated that Massa had filed for bankruptcy, none indicated specifically that Massa had filed a petition pursuant to Chapter 7 or had filed for conversion to Chapter 7. The first letter, dated July 7, 1992, noted that "[w]e have been informed that the Defendant, Louis Massa d/b/a Keseca Development Company, has filed a Chapter 13 Bankruptcy in the Western District of New York." The letter further noted that "[the State Court Action] is now stayed" due to Massa's bankruptcy. The July 14th letter similarly failed to refer to a Chapter 7 proceeding, stating only that Massa "has apparently filed a Chapter 13 bankruptcy." Like the prior letters, the November 18, 1994 letter, while stating that "Massa is in bankruptcy," failed to confer actual knowledge of the Chapter 7 proceeding or the venue for the proceeding.[4]

■ We look "to the totality of the circumstances" in determining whether a creditor was adequately apprised of the proceeding. *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 443 (2nd Cir.BAP 1997); *see also United States v. Hairopoulos (In re Hairopoulos)*, 118 F.3d 1240, 1246 (8th Cir.1997) (notice of Chapter 7 proceeding insufficient to put creditor on inquiry notice of Chapter 13 proceeding); *cf. In re Medaglia*, 52 F.3d at 453 (letter by creditor's counsel acknowledging debtor's Chapter 7 proceeding sufficient to establish actual knowledge of the creditor); *In re Alton*, 837 F.2d at 458–59 (notice of

the bankruptcy proceeding and of the stay mailed by debtor to the creditor sufficient to establish actual notice).

■ Examining the content of the letters, we conclude that under the totality of the circumstances the letters were insufficient to afford the Addonas actual knowledge of Massa's Chapter 7 bankruptcy. *See In re Hairopoulos*, 118 F.3d at 1246 (notice of Chapter 7 proceeding insufficient to constitute actual knowledge of Chapter 13 proceeding); *cf. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 389, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (describing differences between Chapter 7 and Chapter 11); *United States Internal Revenue Serv. v. Osborne (In re Osborne)*, 76 F.3d 306, 310 (9th Cir.1996) (describing differences between Chapter 13 and Chapter 7). None of the letters apprised of the conversion of Massa's bankruptcy from Chapter 13 to Chapter 11 and finally to Chapter 7. *See* 11 U.S.C. § 348(c); Fed. R. Bankr.P. 2002(f)(2). The letters may have been adequate to apprise a creditor of a Chapter 13 bankruptcy; however, knowledge/notice in a Chapter 13 proceeding is insufficient to constitute knowledge/notice if the proceeding is converted to Chapter 7.

Massa's failure to notify the Addonas of the conversion from Chapter 13 to Chapter 7 is important in this case because creditors' responsibilities are completely different under each chapter. Under Chapter 7, the issue of discharge turns upon notice/knowledge and not the scheduling of the debt; under Chapter 13, it turns on scheduling (although notice may be required as well, *see In re Hairopoulos*, 118 F.3d at 1246). The difference is illustrated in the case of creditors such as the Addonas, who believe that the debt was induced by fraud. If they have knowledge of a Chapter 7 proceeding, they would have to

---

4. In certain instances, a post-discharge claim may entitle a creditor to payment from undistributed assets. *See* 11 U.S.C. § 726(a)(2)(C); *In re Columbia Ribbon & Carbon Mfg. Co.*, 54 B.R. 714, 721 (Bankr.S.D.N.Y.1985). In light of our conclusion that the November 18, 1994 letter, which post-dated the discharge, did not provide adequate knowledge, we need not address this issue further.

act or would lose their right to collect the debt. Scheduling is irrelevant if they possessed adequate knowledge. *See* 11 U.S.C. § 523(a)(3). In a Chapter 13 proceeding, however, they need not act to protect their debt.

■ Here scheduling is critical. ˙If the debt were scheduled in the Chapter 13 proceeding, it could be discharged even if it were grounded in fraud; *i.e.,* the Section 523(a)(2) exception does not apply. *See Ravenot v. Rimgale (In re Rimgale),* 669 F.2d 426, 428 (7th Cir.1982); *Illinois Dep't of Pub. Aid v. Ellis (In re Ellis),* 66 B.R. 821, 824 (N.D.Ill.1986) ("All other debts provided for in the plan, regardless of whether they would be dischargeable in a Chapter 7 case, are covered by a Chapter 13 discharge. Therefore, the debtor can use Chapter 13 to avoid claims based on fraud, willful and malicious injuries to persons or property, drunk driving injuries, educational loans and the like.") (internal quotation marks omitted); *St. Joseph Wholesale Liquor Co. v. Butler (In re Butler),* 74 B.R. 106, 108 (W.D.Mo.1985) (mem.). If the debt were not scheduled (and not provided for in the plan), however, notice/knowledge would be irrelevant. *See In re Hairopoulos,* 118 F.3d 1240, 1243 (8th Cir.1997); 8 Lawrence P. King, et. al., Collier on Bankruptcy ¶ 1328.02 (15th ed. rev.1999). Thus, while the Addonas had knowledge of the Chapter 13 proceeding, they were not required to do anything to preserve their right to collect their unscheduled debt later; their inaction in the context of a Chapter 13 proceeding should not act to their detriment in the context of a Chapter 7 proceeding of which they had no notice or actual knowledge.

In order to permit a creditor to act upon conversion of a proceeding from Chapter 13 to Chapter 7, creditors are afforded additional time periods for filing claims, dischargeability complaints and objections to discharge. *See* Fed. R. Bankr.P. 1019(2), (3); *see, e.g., NCNB Tex. Nat'l Bank v. Jones (In re Jones),* 966 F.2d 169, 173 (5th Cir.1992) (bank filed objection to debtors' discharge after conversion from Chapter 11 to Chapter 7). Notice of the conversion to Chapter 7 would have afforded the Addonas an opportunity to act to protect their claim by asserting that the debt was fraudulently incurred pursuant to § 523(a)(2).

Because the Addonas had neither notice nor actual knowledge of the Chapter 7 proceeding, the debt was never discharged. Accordingly, they were not precluded from continuing the State Court Action, and Massa's motion to hold the Addonas, Craig and Cannon in contempt for violations of the Discharge Order and § 524(a) is without merit.

## CONCLUSION

In accordance with the foregoing, the judgment of the district court is affirmed.