**In re Patrick Joseph SEDLACEK, Debtor.**

**WebMD Practice Services, Inc., Plaintiff,**

v.

**Patrick Joseph Sedlacek, Defendant.**

**Bankruptcy No. 04–30291.**
**Adversary No. 04–3196.**

United States Bankruptcy Court,
E.D. Tennessee.

April 19, 2005.

Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., James A. McIntosh, David E. Fielder, Knoxville, TN, for Plaintiff.

Richard M. Mayer, Knoxville, TN, for Defendant/Debtor.

### MEMORANDUM ON 11 U.S.C.A. § 523(a)(3)(B) (WEST 2004) NOTICE ISSUE

RICHARD STAIR, Jr., Bankruptcy Judge.

This adversary proceeding is before the court upon the Complaint Objecting to Discharge of Debt (Complaint) filed by the Plaintiff, WebMD Practice Services, Inc., on August 24, 2004, seeking a nondischargeable judgment against the Defendant/Debtor in an amount to be determined by the court. The Complaint, filed after the bar date fixed for creditors to seek a determination of the dischargeability of certain debts, is grounded upon 11 U.S.C.A. § 523(a)(3)(B) (West 2004), which excepts from discharge debts encompassed by 11 U.S.C.A. § 523(a)(2), (4), and (6) (West 2004) if the creditor does not have notice or actual knowledge of the case in time to make a timely request for a determination of the dischargeability of the debt.[1]

By Order entered March 18, 2005, the trial was bifurcated to allow the court to first determine whether the Plaintiff had

---

1. *See infra* page 209.

notice or actual knowledge of the Debtor's bankruptcy case in time to timely request a determination of dischargeability under 11 U.S.C.A. § 523(a)(2), (4), or (6), thus bringing its claim within the purview of § 523(a)(3)(B). The trial of the notice issue was held on April 5, 2005. The record before the court consists of a Stipulation filed by the parties on March 30, 2005, sixteen exhibits stipulated into evidence, the oral testimony of three witnesses, Leila Turner, Robert R. Carl, Attorney, and the Debtor, along with the deposition testimony of Stephen G. Anderson, Attorney, Michael Glick, Attorney, who is Senior Vice–President of Legal Services for WebMD Corporation and General Counsel for WebMD Practice Services, and Charles Mele, Executive Vice–President and General Counsel for WebMD Corporation.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

## I

In January or February 2000, the Debtor was hired by Medical Manager Health Systems, Inc., a leading provider of practice management software and services for physicians, as a senior member of its acquisition team.[2] In this capacity, the Debtor was authorized to explore and negotiate mergers and acquisitions on behalf of the Plaintiff and to set up new independent dealers. The Debtor's responsibilities included analyzing financial and strategic value and advising the Plaintiff as to the purchase price for potential acquisitions. During the Debtor's tenure, the Plaintiff paid approximately $17,000,000.00 in acquisitions of independent dealers.

The Debtor was terminated from his employment with the Plaintiff on December 30, 2002, amid allegations of misrepre-

sentations of acquisition values, embezzlement of the inflated acquisition amounts into consulting firms controlled by the Debtor, and submission of false expense reports that were paid by the Plaintiff. The Plaintiff contends these amounts total more than $2,235,000.00.

In 2003, the Plaintiff filed a lawsuit against the Debtor in the Circuit Court for Knox County, Tennessee, styled *Medical Manager Health Systems, Inc. v. Sedlacek* and assigned Civil Action No. 3–42–03 (State Court Lawsuit). Attorney Stephen G. Anderson and the law firm of Baker, Donelson, Bearman & Caldwell (Baker Donelson) were retained by the Plaintiff in. connection with the State Court Lawsuit on March 18, 2003, and in April 2003, Mr. Anderson represented the Plaintiff at a possessory hearing in the State Court Lawsuit. Thereafter, a Temporary Injunction was issued on May 21, 2003, prohibiting the Debtor "from selling, transferring, encumbering or removing from this court's jurisdiction any of his real or personal property, including cash and bank deposits[ ] ... [except for any] expenditures as may reasonably be necessary for ordinary living expenses or from paying regularly scheduled obligations as they become due." TRIAL EX. 13. Mr. Anderson approved the Temporary Injunction as "Counsel for Plaintiff." TRIAL EX. 13. He also appeared and represented the Plaintiff at a June 12, 2003 hearing for a prejudgment attachment in the State Court Lawsuit. Following the June 2003 hearing, the Plaintiff and the Debtor agreed to leave the Temporary Injunction in effect.

Thereafter, Mr. Anderson facilitated a proffer of evidence by the Debtor, and he arranged and attended a meeting between

**2.** Medical Manager Health Systems, Inc., was later merged with WebMD Corporation, resulting in WebMD Practice Services, Inc.

These companies are synonymous, and all references to "Plaintiff" in this Memorandum encompass any and all three.

Mr. Glick, Dennis Wagner, an attorney from Florida also representing the Plaintiff, the Debtor, and Richard Gaines, the Debtor's criminal defense attorney. Mr. Anderson, acting as more of an observer, attended but did not ask questions at this meeting, which was held at Baker Donelson's Nashville office on June 27, 2003. At that point, Mr. Anderson's and Baker Donelson's involvement in the State Court Lawsuit ceased for all practical purposes.

The Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on January 22, 2004. In Schedule F to his petition, the Debtor listed the Plaintiff, "Medical Manager Health System, c/o Stephen Anderson, 900 Gay Street, # 2200, P.O. Box 1792, Knoxville, TN 37901," as an unsecured creditor holding an unliquidated claim in the amount of $100,000.00 based upon an "open account" incurred January 1, 2003. COLL. TRIAL EX. 3. The Debtor also listed the State Court Lawsuit in his Statement of Financial Affairs, representing that "Web MD" had obtained a judgment on May 21, 2003. COLL. TRIAL EX. 3.

The Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (Chapter 7 Notice) was issued by the United States Bankruptcy Court Clerk's Office on January 27, 2004, and set forth the following pertinent dates and deadlines: the meeting of creditors was scheduled for March 2, 2004, the deadline to file a complaint objecting to discharge or to determine the dischargeability of certain debts was May 3, 2004, and the deadline to file proofs of claim for non-governmental entities was June 1, 2004. See TRIAL EX. 1. The Chapter 7 Notice was served upon all creditors listed by the Debtor in his statements and schedules, including the Plaintiff. According to the Creditor Mailing Matrix stipulated into evidence, all notices to the Plaintiff were mailed to "Medical Manager Health System, c/o Stephen Anderson, 900 Gay Street, 42200, P.O. Box 1792, Knoxville TN 37901." TRIAL EX. 2.

Following the May 3, 2004 expiration of the deadline for filing complaints objecting to discharge and/or to determine the dischargeability of certain debts, the court, on June 2, 2004, entered an Order entitled "Discharge of Debtor" (Discharge Order), granting the Debtor his discharge. See TRIAL EX. 7. The Discharge Order was then served on all parties in interest, including the Plaintiff at the address on the Creditor Mailing Matrix, "Medical Manager Health System, c/o Stephen Anderson, 900 Gay Street, 42200, P.O. Box 1792, Knoxville TN 37901." TRIAL EX. 2. Mr. Anderson received the Discharge Order on June 7, 2004. See TRIAL EX. 7. He then forwarded the Discharge Order to the Plaintiff, who was unaware of the Debtor's bankruptcy case prior to that date.

Thereafter, on June 21, 2004, the Plaintiff filed a Motion for Leave to File Complaint Objecting to Discharge (Motion for Leave), arguing that it had not received notice of the Debtor's bankruptcy case until after the Discharge Order was entered. The Motion for Leave was denied on July 19, 2004, because the Plaintiff failed to appear at the scheduled July 15, 2004 hearing to prosecute its motion, and because the court found the motion to be "procedurally infirm."

Following the filing of the Motion for Leave, the Debtor filed an Amendment to Schedule F on June 22, 2004. See TRIAL EX. 8. By the Amendment to Schedule F, the Debtor amended Schedule F—Creditors Holding Unsecured Nonpriority Claims to his petition to list "Web MD Corporation" and "Medical Manager," at their respective business addresses in Elmwood Park, New Jersey and Tampa, Florida. TRIAL EX. 8. He also revised the estimated amount of the claim to $500,000.00 and deleted the reference to a

judgment in the listing for the State Court Lawsuit on the Statement of Financial Affairs. TRIAL EX. 8.

By its Complaint, the Plaintiff seeks a judgment against the Debtor and a determination that such judgment is nondischargeable.[3] Additionally, the Plaintiff avers that the Complaint was timely filed, even though it was filed after the May 3, 2004 deadline, because the Plaintiff was not properly listed in the Debtor's schedules. On October 20, 2004, the Debtor filed an Answer to Complaint in which he did not answer any of the Plaintiff's allegations of fraud, but he did dispute the timeliness of the Complaint on the basis that the Plaintiff was properly listed in his Statements and Schedules.

## II

■ The Plaintiff seeks a judgment against the Debtor and a determination that the judgment is nondischargeable. The nondischargeability of debts is governed by 11 U.S.C.A. § 523, which provides, in material part:

(a) A discharge under section 727[4] . . . of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

**3.** As previously noted, the Plaintiff avers that it is entitled to a nondischargeable judgment based upon the Debtor's fraudulent misrepresentations and/or embezzlement pursuant to 11 U.S.C.A. § 523(a)(2)(A) and/or (4).

**4.** Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title[.]" 11 U.S.C.A. § 727(b) (West 2004). This accomplishes the

(3) neither listed nor scheduled under section . 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

. . . .

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; [or]

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C.A. § 523(a).

■ Because § 523(a) is construed strictly against the Plaintiff and liberally in favor of the Debtor, the Plaintiff bears the burden of proving each of the elements necessary for a determination of nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 281 (6th Cir.1998); *Haney v. Copeland (In re Copeland),* 291 B.R. 740, 759 (Bankr. E.D.Tenn.2003). Additionally, the bankruptcy court possesses the jurisdiction and authority to adjudicate the Plaintiff's claims and award any necessary damages. *Copeland,* 291 B.R. at 792 (citing *Longo v.*

goals of Chapter 7 to relieve "honest but unfortunate" debtors of their debts and allow them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr.E.D.Tenn.2003) quoting *In re Krohn,* 886 F.2d 123, 125 (6th Cir.1989) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

*McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir.1993)).

Section 523(a) is supplemented by Federal Rule of Bankruptcy Procedure 4007, which states, in material part:

**(a) Persons entitled to file complaint**

A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.

. . . .

**(c) Time for filing complaint under § 523(c) in a chapter 7 liquidation ...; notice of time fixed**

A complaint to determine the dischargeability of a debt under § 523(c)[5] [in a chapter 7 liquidation] shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). . . . On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

. . . .

**(e) Applicability of rules in Part VII**

A proceeding commenced by a complaint filed under this rule is governed by Part VII of these rules.

FED. R. BANKR. P. 4007; *see also* FED. R. BANKR. P. 7001(6) ("[A] proceeding to determine the dischargeability of a debt" is an adversary proceeding.).

■ Of the debts set forth in § 523(a), only those arising under subsections (2), (4), (6), and (15) require the party

seeking a determination of dischargeability to file a complaint within the prescribed sixty days from the date that the meeting of creditors was first set. 11 U.S.C.A. § 523(c)(1); FED. R. BANKR. P. 4007(c). If a party does not file its complaint prior to the deadline, and it falls within the scope of those subsections, the debt is discharged. An exception to this limitation, however, is found in 11 U.S.C.A. § 523(a)(3)(B) (West 2004), which states that if a debt is fraud-based, falling within the scope of subsections (2), (4), or (6), was not listed or scheduled, and the creditor did not receive notice or have actual knowledge of the case in time to timely file a complaint to determine dischargeability that would have been successful, the debt is nondischargeable.[6] *Jones v. Warren Constr. (In re Jones)*, 296 B.R. 447, 449 (Bankr.M.D.Tenn.2003).

■ There is no time limitation for filing a complaint under § 523(a)(3)(B), nor must a creditor obtain permission from the court to do so, unless the case has been closed and must be reopened. FED. R. BANKR. P. 4007(b) ("A complaint other than under § 523(c) may be filed at any time [and without payment of a fee in a closed case]."); *see also First Nat'l Ins. Co. of Am. v. Bartomeli (In re Bartomeli)*, 303 B.R. 254, 269 (Bankr.D.Conn.2004) ("[A § ] 523(a)(3)(B) complaint as to nondischargeability of a debt can be brought any time, any place. 'In short, the penalty to the debtor for failing to schedule a fraud debt or otherwise inform the creditor of the bankruptcy is forfeiture of the right to

---

**5.** Section 523(c) provides, in material part:

(c)(1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed,

and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

11 U.S.C.A. § 523(c) (West 2004).

**6.** *See supra* page 209.

enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions.' ") (quoting *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 924 (Bankr.E.D.Cal.1995)).

The Plaintiff clearly filed its Complaint outside the Rule 4007(c) deadline for filing a complaint under § 523(c). Nevertheless, if it was not properly listed or scheduled, did not have actual knowledge of the bankruptcy case, and would have succeeded in proving its claim of nondischargeability under § 523(a)(2)(A) and/or (4), the Complaint is not time-barred by Rule 4007(c), but instead is governed by Rule 4007(b). Because the trial of this adversary proceeding was bifurcated, the only issue before the court at this stage is the parties' dispute over whether the Plaintiff was properly listed or scheduled in the Debtor's bankruptcy schedules, or had actual knowledge of the Debtor's bankruptcy case, and thus, whether the Complaint itself was timely filed.

### III

 All debtors are required to file a list of creditors and their addresses or a schedule of liabilities. 11 U.S.C.A. § 521(1) (West 2004); FED. R. BANKR. P. 1007(a) ("In a voluntary case, the debtor shall file with the petition a list containing the name and address of each creditor unless the petition is accompanied by a schedule of liabilities.").[7] "The purpose of requiring a debtor to list creditors with their proper mailing addresses is to afford those creditors basic due process notice." *In re O'Shaughnessy*, 252 B.R. 722, 729 (Bankr.N.D.Ill.2000) (quoting *In re Glenwood Med. Group, Ltd.*, 211 B.R. 282, 285 (Bankr.N.D.Ill.1997)). Constitutional due process requires proper notice. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). "The burden of establishing that a creditor has received adequate notice rests with the debtor." *Massa v. Addona (In re Massa)*, 187 F.3d 292, 296 (2d Cir.1999).

 In the bankruptcy context, the "only information about the identities and addresses of creditors to be served with the case notices comes from the debtor." *In re Hicks*, 184 B.R. 954, 957 (Bankr. C.D.Cal.1995). Therefore, in order to satisfy the elements of due process, a debtor's schedules must contain accurate informa-

---

7. In this district, all debtors must also comply with Local Rule 1007–2, which states, in material part:

(a) A master address list shall be filed along with any petition initiating a voluntary bankruptcy case .... The list will be treated as the list of creditors required by Fed. R. Bankr.P. 1007(a). The list shall include the names and complete addresses of all creditors and parties in interest ... who are to be notified of the case as required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, including the addresses of all parties required to be notified under Fed. R. Bankr.P.2002(j).

. . . .

(c) Every master address list shall be accompanied by a verification from every debtor stating that "the above named debtor(s) hereby verify(ies) under the penalty of perjury under the laws of the United States of America that the attached list of creditors is true and correct to the best of my(our) knowledge," signed by the debtor(s) and the attorney of record. The failure of a debtor to file a master address list shall constitute grounds for the *sua sponte* dismissal of a case.

E.D. Tenn. LBR 1007–2.

tion concerning a creditor's address. *SouthTrust Bankcard Ctr. v. Curenton (In re Curenton)*, 205 B.R. 967, 970 (Bankr. M.D.Ala.1995); *see also Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1103 (5th Cir.1984) ("It is clear that one of the primary purposes of the list of creditors in the schedules is to provide to the court information as to persons entitled to notice."). "This obligation to list all creditors' names and addresses is part of the debtor's duty of full disclosure that is the quid pro quo for the fresh start provided by the discharge." *Hicks*, 184 B.R. at 957.

▮▮▮▮ "[I]f a creditor is not given reasonable notice of the bankruptcy case and the relevant bar dates, its claim cannot be constitutionally discharged." *O'Shaughnessy*, 252 B.R. at 729. Likewise, "[w]hen a debtor does not afford a creditor due process, either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of a debt cannot be time-barred under Fed. R. Bankr.P. 4007(c)." *Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 800 (10th Cir. BAP 2003). This is particularly true in Chapter 7 cases, where "the issue of discharge turns upon notice/knowledge and not the scheduling of the debt[.]" *Massa*, 187 F.3d at 297.

▮▮▮▮ On the other hand, a debtor who fails to give formal notice but provides actual notice to a creditor in time for the creditor to protect its rights is not precluded from receiving a discharge. *See, e.g., Rowe v. Steinberg*, 253 B.R. 524, 528

(E.D.Mich.2000) (holding that oral notification of a debtor's bankruptcy constituted actual notice for the purposes of Rule 4007 deadlines). "The debtor's duty to afford due process is counterbalanced by the creditors' duty to object to the discharge of a debt if it has *any* notice or knowledge [of] a Chapter 7 case prior to the expiration of the time limitation set forth in [Rule] 4007(c)." *Schicke*, 290 B.R. at 800.

▮▮▮▮ In his schedules, the Debtor listed the Plaintiff as an unsecured creditor holding an unliquidated claim in the amount of $100,000.00. The address given for the Plaintiff, "Medical Manager Health System" was in care of its attorney of record in the State Court Lawsuit. Although the Plaintiff argues that it was not duly scheduled because the Debtor did not serve it at either of its places of business, "[n]either [§ 521(1) ] nor [the Bankruptcy Rules] state that the creditor be listed at a particular address. Thus, there is no requirement that a corporate creditor be listed at its home office or principal place of business." *In re Savage*, 167 B.R. 22, 26 (Bankr.S.D.N.Y.1994). Nevertheless, the Debtor was still under an obligation to afford notice of his bankruptcy case that was "reasonably calculated" to reach the Plaintiff in time for it to protect its rights.

There is no question that the Plaintiff did not receive formal notification of the Debtor's bankruptcy case. Despite his acknowledgment at trial that he knew the address of the Plaintiff when he filed his petition,[8] the Debtor did not list the Plain-

---

8. Specifically, the Debtor testified on cross-examination by the Plaintiff's counsel as follows:

Q: All right. And you're saying that you became employed with [the Plaintiff] in January of 2000?
A: That's correct. I believe it was late January or early February.

Q: All right. And you well knew the address of your employer; didn't you?
A: I'm not sure I understand the question.
Q: You knew the address of your employer; didn't you?
A: Yes, I did.
Q: All right. And when you filled out your bankruptcy papers, or you went to see Mr. Mayer about your bankruptcy papers, you

tiff at either the Elmwood Park, New Jersey address given for WebMD Corporation or the Tampa, Florida address given for Medical Manager Health Systems, Inc., subsequently set forth on his Amendment to Schedule F. *See* TRIAL Ex. 8. He stated that he listed the Plaintiff in care of Mr. Anderson because Mr. Anderson represented the Plaintiff in the State Court Lawsuit. The Debtor conceded that he did not list the Plaintiff in care of any of its other attorneys who he dealt with following the June 2003 hearing; however, he also testified that he was never advised orally or in writing that he should deal with any attorney other than Mr. Anderson in the State Court Lawsuit.

Along those lines, there is no dispute that the Plaintiff, itself, did not receive actual knowledge of the bankruptcy filing until after the deadline had passed. On September 8, 2003, Mr. Anderson was instructed by Mr. Glick to take no further action in the State Court Lawsuit, as the Plaintiff was dealing directly with the Debtor and Mr. Gaines through separate counsel. TRIAL Ex. 16, at page 10, line 24 through page 11, line 11. With the exception of taking a call from one of the Plaintiff's other attorneys and forwarding a deposition transcript to him, Mr. Anderson stated that he took no further action and had no contact with the Plaintiff, the Debtor, or Mr. Gaines between September 8, 2003, and January 22, 2004, the filing date. TRIAL Ex. 16, at page 14, line 23 through page 15, line 19. He did acknowledge, however, that he never advised the Debtor

or Mr. Gaines that he was no longer involved in the case, and at the time the bankruptcy case was filed, he was still the attorney of record in the State Court Lawsuit. TRIAL Ex. 16, at page 25, lines 21 through 25; at page 26, lines 4 through 8; at page 28, lines 1 through 12. Upon receipt of the Discharge Order, Mr. Anderson testified that he called Mr. Glick to see what arrangements were reached in the bankruptcy case and discovered that Mr. Glick was unaware of the Debtor's bankruptcy.

Mr. Glick confirmed that, on September 3, 2003, after learning that the Department of Justice was investigating the Plaintiff, in part due to the money it claims was embezzled by the Debtor, he instructed Mr. Anderson to take no further action in the State Court Lawsuit. TRIAL Ex. 15, at page 7, line 18 through page 8, line 18. He also stated that between June 2003 and June 7, 2004, he had at least one communication with Mr. Gaines and the Debtor, together, and he had a few conversations with Mr. Gaines. TRIAL Ex. 15, at page 10, lines 6 through 12. Mr. Glick also testified that Mr. Gaines and/or the Debtor had contacts with attorneys from Williams & Connally on occasions after September 3, 2003, but he was unsure of the number. TRIAL Ex. 15, at page 10, line 25 through page 11, line 7. And, although he instructed Mr. Gaines to work with Mr. Wagner following the June 27, 2003 meeting in Nashville, he did not direct Mr. Anderson to withdraw as attorney of record, nor did

gave him the address of your employer; didn't you?

A: I don't remember that.

Q: You said in your deposition that we took that you gave him that in the past several times; didn't you?

A: Yes, that's correct.

Q: All right. Did Mr. Mayer tell you that it's important to list the name and the address of the creditor?

A: Yes.

Q: All right. Why didn't you list the correct address of the creditor?

A: The creditor was represented by Steve Anderson and that was the contact I understood that needed to be represented on that document.

CROSS-EXAMINATION OF PATRICK JOSEPH SEDLACEK

he advise Mr. Gaines or the Debtor, either orally or in writing, that Mr. Anderson was no longer actively representing the Plaintiff. Trial Ex. 15, at page 14, lines 10 through 20; at page 15, lines 7 through 11; at page 16, lines 3 through 24; at page 17, line 24 through page 18, line 18; at page 18, line 24 through page 19, line 10; at page 19, lines 17 through 23.

Mr. Glick testified that, although these various communications occurred, neither he, the Plaintiff, any employee of the Plaintiff, nor any of the Plaintiff's other attorneys were given notice of the Debtor's bankruptcy case prior to June 7, 2004. Trial Ex. 15, at page 12, lines 7 through 23. With respect to his office staff, Mr. Glick stated that all employees have been given instructions to route any legal notices or correspondence to the office of Charles Mele, General Counsel for WebMD Corporation. Trial Ex. 15, at page 12, line 24 through page 13, line 17. Mr. Mele echoed those instructions, verifying that all legal notices received in the mail, as well as all documents personally served at the company, are directed to him. Trial Ex. 14, at page 5, line 22 through page 6, line 18. Further, he testified that he did not see any notice of the Debtor's bankruptcy case, and he was unaware of the filing until Mr. Glick advised him of the discharge in the summer of 2004. Trial Ex. 14, at page 7, lines 2 through 23.

The court is satisfied that the Plaintiff, itself, did not receive direct notice, nor did it have actual knowledge of the bankruptcy filing until June 7, 2004. Therefore, the court must determine if listing the Plaintiff in care of its attorney in the State Court Lawsuit and providing service of the Chapter 7 Notice, complete with bar dates, upon the Plaintiff's attorney, Mr. Anderson, meets the requirements of constitutional due process and provided the Plaintiff with adequate notice whereby it could protect its rights.

## A

Under established agency law, notice or knowledge is imputed to the principal when the agent "is acting within the scope of his authority and the knowledge pertains to matters within the scope of the agent's authority." *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 457 (6th Cir. 1982). In Tennessee, "[i]t is well settled law ... that clients are charged with the knowledge of their attorneys under an agency theory. 'Counsel's knowledge must be attributed to his client, if the actions of the court are to have any efficacy.'" *Batchelor v. Heiskell, Donelson, Bearman, Adams, Williams, & Kirsch, P.C.*, 828 S.W.2d 388, 394 (Tenn.Ct.App. 1991) quoting *Winstead v. First Tenn. Bank, N.A.*, 709 S.W.2d 627, 632 (Tenn.Ct. App.1986) (quoting *Moody v. Moody*, 681 S.W.2d 545, 546 (Tenn.1984)). "Knowledge by an agent of a creditor of the pendency of a bankruptcy case will be imputed to the creditor if his agent was employed to collect the debt or was in charge of its collection." *In re Linzer*, 264 B.R. 243, 248–49 (Bankr.E.D.N.Y.2001) ("[A]n implicit assumption is that when a non-bankruptcy counsel is actively engaged in prosecuting a creditor's claim against the debtor before a non-bankruptcy tribunal ... that is a sufficient nexus to the bankruptcy case to justify imputing authorized agency.").

There is a conflict of authority with respect to whether knowledge by an attorney is imputed to a creditor client when the creditor was listed in the debtor's bankruptcy schedules in care of the attorney. On the one hand, some courts have held that "notice of the filing of a bankruptcy case sent to a creditor's attorney will be binding on that creditor where the

attorney has been retained to collect the debt scheduled in the bankruptcy petition." *Savage,* 167 B.R. at 26.

An attorney may be an agent of his or her client, and notice to an agent-attorney can be imputed to the principal-client. It has been held that debtors may list a creditor in care of its attorney in their Schedule of Liabilities, provided that the attorney is the creditor's agent in the context of the bankruptcy cases, and notice to the attorney-agent will be "notice" under § 523(a)(3)(B). While an attorney need not have been retained to represent a creditor in a bankruptcy case or be a bankruptcy attorney, it is important that there be some nexus between the creditor's retention of the attorney and the creditor's issue with the debtor. It is generally held that an attorney who represents the creditor in matters against a debtor prepetition, such as in obtaining or collecting a judgment that will be affected by discharge, will be an agent of the creditor in the context of a debtor's bankruptcy case.

*Schicke,* 290 B.R. at 802–03 (footnotes omitted).

Conversely, it has been held that "an attorney's representation of a party in one action does not make the attorney an agent for the party in an unrelated case between the same parties." *Carpet Servs., Inc. v. Hutchison (In re Hutchison),* 187 B.R. 533, 536 (Bankr.S.D.Tex.1995) (quoting *Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir.1985)). The *Hutchison* court also determined that "proper scheduling of a creditor requires listing the creditor at its own address or at least that of an agent designated for service of process." *Hutchison,* 187 B.R. at 535.

▮ The parties have stipulated that the Bankruptcy Court Clerk's office did not receive any undelivered or returned mail in the Debtor's case file with

respect to the Plaintiff. Therefore, the Debtor argues that, because the Chapter 7 Notice in the Debtor's case was not returned to the Clerk's office, there is the presumption that it was received by Mr. Anderson. There is a general presumption among the courts "that an addressee receives a properly mailed item when the sender presents proof that the item was properly addressed, stamped, and sent through the United States mail[,]" *In re Chess,* 268 B.R. 150, 156 (Bankr.W.D.Tenn. 2001), which is strengthened when the mail was not returned to the clerk's office. *In re Glenwood Med. Group, Ltd.,* 211 B.R. 282, 286 (Bankr.N.D.Ill.1997). This presumption can be rebutted, however, by presenting evidence that the addressee did not receive the mail and by establishing that it had standardized procedures for receiving and routing its mail. *Ms. Interpret v. Rawe Druck–und–Veredlungs–GmbH (In re Ms. Interpret),* 222 B.R. 409, 413 (Bankr.S.D.N.Y.1998). And, in the Sixth Circuit, "[t]estimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt; such testimony is therefore sufficient to rebut the presumption of receipt." *Bratton v. Yoder Co. (In re Yoder Co.),* 758 F.2d 1114, 1118 (6th Cir.1985).

With respect to whether he actually received the notice, Mr. Anderson testified that he had no recollection of having received it in January 2004. TRIAL EX. 16, at page 13, lines 5 through 7. He also testified that, at that time, receiving the Chapter 7 Notice would not have had any significance to him. TRIAL EX. 16, at page 13, lines 11 through 13; at page 14, lines 13 through 22. Mr. Anderson also provided the following testimony about his standardized practices regarding his mail:

Q: Do you know what your secretary's procedure is for opening your mail?

A: I do.

Q: Does she open your mail?

A: She does.

Q: All right. Will you tell me what procedure she follows.

A: She opens all of my mail. She removes the envelope—she takes the envelope and discards it unless it is of particular significance. If it was a certified return receipt requested or something like that, she would—she would keep it, if we had sent out a notice or something. But otherwise she discards the envelope. She orders the mail according to the most significant items on the top and puts the rest of the mail on the bottom. She creates a—a stack of it and brings it into my office.

TRIAL EX. 16, at page 16, lines 2 through 18.

This testimony of Mr. Anderson was consistent with that of Ms. Turner, who has been employed by Baker Donelson as Mr. Anderson's secretary for ten years. Ms. Turner testified that when she opens Mr. Anderson's mail, she throws away the envelopes unless they are registered, certified, or enclose an undocumented check. She then scans all correspondences, date stamps each item, and arranges them according to importance. Ms. Turner expressly stated that she pays attention to every document that comes across her desk, and that she does not recall receiving the Chapter 7 Notice in January 2004. She did, however, remember receiving the Discharge Order, as well as the "commotion" it caused in the office. Additionally, she recalled that the Discharge Order came in the afternoon mail.

Neither Mr. Anderson nor Ms. Turner could remember, unequivocally, whether the Chapter 7 Notice came to their office, and in fact, Mr. Anderson acknowledged that he could not state, with any degree of certainty, whether or not he actually received the Chapter 7 Notice. TRIAL EX. 16, at page 13, lines 8 through 10. Additionally, when asked whether he ever receives notices in cases that he is no longer involved in, Mr. Anderson answered in the affirmative, stating that he usually discards them. TRIAL EX. 16, at page 15, line 20 through page 16, line 1. In this case, Mr. Anderson would not discount the possibility that either he or Ms. Turner discarded the Chapter 7 Notice. TRIAL EX. 16, at page 26, lines 21 through 24.

Mr. Anderson did, however, raise an issue with respect to the address shown on the mailing matrix. After receiving the Discharge Order on June 7, 2005, Mr. Anderson directed his paralegal to print the mailing matrix off of the court's website. TRIAL EX. 16, at page 18, lines 16 through 21. At that time, he discovered that his address was incorrect, in that the street address does not reflect the proper suite number, and the zip code is incorrect. TRIAL EX. 16, at page 12, lines 4 through 22. The address shown on the Creditor Mailing Matrix is "Medical Manager Health System, c/o Stephen Anderson, 900 Gay Street, 42200, P.O. Box 1792, Knoxville, TN 37901." TRIAL EX. 2.

 "It is well settled that if a debtor lists incorrectly the name or address of a creditor in the required schedules, so as to cause the creditor not to receive notice, that creditor's debt has not been 'duly scheduled[.]'" *Adams,* 734 F.2d at 1098. "While the Bankruptcy Code provides no guidance as to what is the proper address of a creditor, the law is clear that such an address must be one at which notice or service would be reasonably calculated to comply with constitutional notions of due process." *In re Kleather,* 208 B.R. 406, 410 (Bankr. S.D.Ohio 1997). Likewise, when a court has promulgated a local rule requiring a mailing matrix to accompany the state-

ments and schedules, an incorrectly listed address therein does not satisfy due process. *Adams,* 734 F.2d at 1103. Accordingly, "where a creditor challenges the accuracy of a listed address, the burden should properly fall upon the creditor to establish that the address provided by the debtor was so incorrect as to fall short of this threshold." *Kleather,* 208 B.R. at 410 (quoting *Oxford Video, Inc. v. Walker (In re Walker),* 125 B.R. 177, 180 (Bankr. E.D.Mich.1990)).

■ The court believes that this burden has been satisfied by the Plaintiff. First, the address on the Creditor Mailing Matrix lists an incorrect suite number for Mr. Anderson and Baker Donelson, "42200," rather than the actual suite number "2200." *See* TRIAL Ex. 16, at page 12, lines 16 through 17. Second, the actual street address should be "900 South Gay Street," rather than simply "900 Gay Street." *See* TRIAL Ex. 16, at page 12, lines 16 through 17. Third, the addressee was the Plaintiff, who is not a known recipient of mail at the Baker Donelson 900 South Gay Street address or post office box listed on the Creditor Mailing Matrix. Fourth, and most significantly, the address lists both a street address for the Plaintiff, "c/o Stephen Anderson" at "900 Gay Street," as well as the post office box for Baker Donelson, "P.O. Box 1792." The zip code listed on the mailing matrix is 37901. The court takes judicial notice [9] that the zip code for the Riverview Tower office complex of Baker Donelson, located at 900 South Gay Street, is 37902, while Baker Donelson's post office box in the downtown Knoxville Post Office located on Main Street has the different 37901 zip code.[10] Designation of the Plaintiff as the addressee, the fact that both a street address and post office box address are listed, but only the post office box zip code is reflected, coupled with the incorrect suite number, establish ambiguities that the Debtor did not refute, thereby leading the court to conclude that there is a real likelihood that Mr. Anderson did not receive the Chapter 7 Notice, despite the absence of returned mail to the clerk's office. The court cannot presume delivery by the post office of an item placed in the mail under the name of an unfamiliar addressee with two different addresses listed. Accordingly, based upon these ambiguities, along with the testimony of Mr. Anderson and Ms. Turner, the presumption of receipt has been rebutted, such that the Plaintiff is not charged with notice or actual knowledge of the Debtor's bankruptcy case.

### B

■ The Debtor also contends that, in addition to being listed in the statements and schedules and the mailing matrix, Mr. Anderson's law firm, Baker Donelson, had actual knowledge of the Debtor's bankruptcy case, which should be imputed to the Plaintiff. In support of this argument, the Debtor relies upon an April 1, 2004 letter written by his bankruptcy attorney,

9. The court may take judicial notice of "generally known" facts, "whether requested or not," pursuant to Rule 201 of the Federal Rules of Evidence. *See* FED. R. EVID. 201(a), (b), (c).

10. Mr. Anderson also testified that the zip code shown on the mailing matrix was incorrect, but he mistakenly stated that the zip code for the street address was 37901, and that the zip code for the post office box was 37902. *See* TRIAL EX. 16, at page 12, lines 11 through 22. Nevertheless, his confusion as to the proper zip code only reinforces the court's finding that ambiguities exist such that it cannot be presumed that Mr. Anderson actually received the Chapter 7 Notice.

Richard M. Mayer, to Robert R. Carl, an attorney with Baker Donelson, who has represented General Motors Acceptance Corporation (GMAC) in past bankruptcy cases. *See* TRIAL EX. 5. The letter, notifying Mr. Carl that the Debtor wished to surrender a leased automobile financed by GMAC, states that "I am writing to you as known attorney for GMAC. If you are not representing GMAC in this case, please pass this letter along to proper representative." TRIAL EX. 5. In addition, the letter enclosed a copy of the Debtor's Amended Statement of Intention, reflecting his intention to surrender the vehicle. *See* TRIAL EX. 6.

At trial, Mr. Carl testified that he did not represent GMAC in the Debtor's bankruptcy case, and in fact, as of April 2004, he no longer represented GMAC in any matters except with regard to two files which remained to be closed. Mr. Carl stated that he did not recall receiving the letter from Mr. Mayer, but if he had, he would have first looked for a file. Then, he would have either (1) forwarded the letter to GMAC; (2) thrown it away if GMAC was listed on the certificate of service for the Amended Statement of Intention; or (3) called Mr. Mayer to advise that he did not represent GMAC. Because GMAC was listed on the certificate of service, Mr. Carl speculated that he possibly discarded the letter. Additionally, Mr. Carl stated that he did not file a proof of claim on GMAC's behalf; instead, the proof of claim filed on February 18, 2004, was filed directly by GMAC, signed by R. Hutton, and reflected an address in Troy, Michigan. *See* TRIAL EX. 4. Finally, Mr. Carl testified that prior to preparing for trial, he had not seen the February 18, 2004 proof of claim, and he had not discussed the Debtor's bankruptcy case with anyone in his office, including Mr.

Anderson, who does not generally do bankruptcy work.

Mr. Mayer's April 1, 2004 letter to Mr. Carl cannot form the basis for imputing actual knowledge of the Debtor's bankruptcy filing upon the Plaintiff. First, Mr. Carl was not employed by GMAC in the Debtor's bankruptcy case. Second, Mr. Carl was not employed by the Plaintiff in either the Debtor's bankruptcy case or the State Court Lawsuit. Third, Mr. Mayer did not reference the State Court Lawsuit in the April 1, 2004 letter, and in fact, sent the letter under the erroneous assumption that Mr. Carl represented GMAC. Mr. Carl checked his open GMAC files, deduced that he did not represent GMAC in the Debtor's case, saw that GMAC was listed on the certificate of service for the Amended Statement of Intention, and took no further action. Mr. Carl's actions were reasonable under the circumstances, and the fact that he received a piece of correspondence regarding the Debtor, when he did not represent any of the parties to the State Court Lawsuit or even GMAC as assumed by Mr. Mayer, does not and cannot impute notice or actual knowledge of the Debtor's bankruptcy case to the Plaintiff.

### IV

In summary, the court finds that the Debtor knew the actual business addresses for the Plaintiff at the time he prepared the statements and schedules accompanying his Voluntary Petition filed on January 22, 2004. Because he did not list, in his original statements and schedules or his mailing matrix, the Plaintiff at either the Medical Manager Health Systems address in Tampa, Florida, or the WebMD Corporation address in Elmwood Park, New Jersey, which he later listed in his Amendment to Schedule F, filed after receiving his discharge, the Plaintiff did not receive

actual notice of the Debtor's bankruptcy case.[11] Furthermore, because the address for the Plaintiff "c/o Mr. Anderson" was ambiguous, causing the court to question whether the Chapter 7 Notice was actually received, and rebutting the presumption of receipt, the Debtor has not met his burden of proof that Mr. Anderson had actual knowledge of the Debtor's case, and, therefore, knowledge will not be imputed to the Plaintiff. Finally, because Mr. Carl was in no way associated with either the Debtor, his bankruptcy case, or his State Court Lawsuit, any round-about knowledge of the case that he might have received from the April 1, 2004 letter from Mr. Mayer will not be imputed to the Plaintiff.

The court finds that the Plaintiff did not receive notice or actual knowledge of the Debtor's bankruptcy case in time to timely file a complaint to determine nondischargeability of its debt, and accordingly, the Plaintiff's Complaint pursuant to § 523(a)(3)(B) shall be considered by the court in the second phase of this bifurcated trial.

---

11. As previously stated, the Debtor acknowledged that he knew his former employer's address, but he listed it in care of Mr. Anderson, who he knew represented the Plaintiff in the State Court Lawsuit. His explanation was not particularly believable, and in light of his admissions to inconsistencies and falsehoods contained in his statements and schedules, that were not amended, the court finds the Debtor's testimony to be unreliable, self-serving, and without credibility.